Argued September 7, accused reprimanded November 18, 1976

# In re Complaint as to the Conduct of
# ROGER ROOK, *Accused.*

556 P2d 1351

*Duane Vergeer,* Portland, argued the cause for petitioner. With him on the brief were Vergeer, Samuels, Roehr & Sweek, and Rudy R. Lachenmeier, Portland.

*Don Marmaduke,* Portland, argued the cause for the Oregon State Bar. With him on the brief was Steven A. Lowenstein, Portland.

*W. Michael Gillette,* Solicitor General, Salem, filed a brief Amicus Curiae on behalf of Attorneys for Oregon District Attorneys Association. With him on the brief were Bruce A. Bottini, John C. Bradley, David L. Hattrick, Stephen F. Peifer, Michael D. Schrunk and Judy D. Snyder, Multnomah County Deputy District Attorneys, Portland.

*John Henry Hingson, III,* Oregon City, filed a brief Amicus Curiae on behalf of National Association of Criminal Defense Lawyers.

*Roy Dwyer,* Eugene, filed a brief Amicus Curiae on behalf of Oregon Trial Lawyers Association.

Before Denecke, Chief Justice, and McAllister, O'Connell, Tongue, Howell and Bryson, Justices.

PER CURIAM.

## PER CURIAM.

Roger Rook, the District Attorney of Clackamas County, is accused of unethical conduct in refusing to plea bargain with 15 criminal defendants on the same basis as previously offered to another criminal defendant as long as they were represented by either of their two attorneys.

The complaint of the Oregon State Bar charges that this conduct by the accused was improper and unethical in that: (1) Such conduct was "prejudicial to the administration of justice," in violation of DR 1-102(A)(5) of the Code of Professional Responsibility of the Oregon State Bar; (2) Such conduct "serve[d] merely to harass or maliciously injure another," in violation of DR 7-102(A)(1) of that Code; (3) Such conduct "deprived defendants in criminal cases of their right to the assistance of counsel of their own choice, as guaranteed to them by the 6th and 14th Amendments to the United States Constitution," and (4) By such conduct the accused "encouraged the continuance of criminal actions or proceedings from motives of passion or interest," in wilful violation of ORS 9.460(7).

These charges were denied by the accused, who also contended: (1) That "none of the disciplinary rules cited by the Bar were intended to apply to the facts of this case"; (2) That "the Bar's authority to discipline a prosecutor should be narrowly circumscribed"; (3) That "the burden of proof is on the Bar to show by clear and convincing evidence that the Accused acted unethically, and proof of mere negligence is not enough"; (4) That "there exists no right to a *particular* counsel"; (5) That "if the right to a particular counsel exists, it was either not infringed, waived, or justifiably denied under the circumstances"; and (6) That "all of the Bar's alleged charges are unconstitutionally vague as applied to the facts of this case."

A Trial Board of the Oregon State Bar, after a

three-day hearing, found the accused guilty of all four charges. A majority of the members of that board recommended that the accused be suspended from the practice of law for six months. A third member recommended suspension for two years. After a review of the record by the Disciplinary Review Board of the Oregon State Bar, two of its members "agree[d] that the accused committed an unethical act, but * * * disagree[d] with the recommended punishment" and recommended that the accused be reprimanded for such conduct. One member of that board, by a separate and dissenting opinion, recommended that the proceeding should be dismissed. The accused has filed a petition in this court to reject the opinion, conclusions and recommendations of that board and to adopt the dissenting opinion.

The facts giving rise to the complaint, as stated in the decision of the Trial Board, are not seriously controverted by counsel, except to complain of some omissions. That statement of facts is as follows:

"This proceeding arises out of three complaints filed in late 1974 and early 1975, by members of the Oregon City Elks' Lodge who had been indicted for gambling violations as a result of a raid by law enforcement officers on the Oregon City Elks' Club in the early morning hours of December 3, 1972.

"The essential facts giving rise to the complaints are not controverted. Mr. Phil H. Ringle, Jr., an attorney who is a member and the internal legal officer of the Elks' Lodge ('Presiding Justice of the Subordinate Forum') was called to the Elks' Club on the night of the raid to give legal advice to its members and employees. Mr. Ringle then undertook to represent the Lodge. A few days after the raid, Mr. Ringle associated with him as co-counsel Mr. Ronald D. Thom, an attorney whose practice is weighted toward criminal defense. Upon Mr. Thom's association with Mr. Ringle as co-counsel for the Lodge, he became Mr. Ringle's assistant as the Lodge's internal legal officer.

"Mr. Thom is a member of the Elks' Lodge and was present in the Elks' Club at the time of the raid,

[ 697 ]

although there is no evidence of any participation by Mr. Thom in any illegal gambling. Mr. Thom is a former employee of the Accused, having served as a deputy district attorney from 1965 through 1968. During the last one and one-half years of his tenure, he was the Accused's Chief Criminal Deputy.

"Following the raid, the Lodge agreed to supply legal counsel to individual employees and members of the Elks' Lodge should criminal charges be brought against them. It was communicated to the members and employees that if they desired legal assistance, Messrs. Ringle and Thom were available for this purpose.

"Messrs. Ringle and Thom actively counseled with and represented the Lodge and its members and employees during the balance of 1973 and early 1974, including the grand jury term during which more than one hundred persons were called to testify. In early 1973, criminal indictments for illegal gambling were handed down with respect to the Elks' Lodge and seventeen of its individual members. Initially sixteen of the individuals were represented by Messrs. Ringle and Thom, and one defendant chose other counsel. Fifteen of the defendants were represented by Messrs. Ringle and Thom during all periods of time here involved.

"Legal fees for all seventeen defendants were paid for by the Elks' Lodge, although there is no evidence that Mr. Rook was aware of the fee arrangements as to Messrs. Ringle and Thom.

"As a result of negotiations between Mr. Ringle and the District Attorney's office, it was stipulated that criminal charges against the Lodge would be disposed of first, and charges against the seventeen individual defendants would be held in abeyance. In July, 1973, as a result of negotiations between Mr. Ringle and the District Attorney's office, the case against the Lodge was tried as to three counts and the remaining counts were dismissed.

"The Lodge was convicted on the three charges and the conviction was affirmed on appeal, the appellate process being completed during 1974. During the pendency of the case against the Lodge, there were ongoing but unsuccessful plea negotiations conducted as to the individual defendants.

[ 698 ]

"The cases against the seventeen individual defendants were set for separate trials during the fall of 1974. The first case to come on for trial involved a defendant not represented by Mr. Ringle or Mr. Thom and resulted in an acquittal. The second case involved a client represented by Messrs. Ringle and Thom and was set for trial on Tuesday, November 12, 1974. On the Friday, prior to the November 12 trial, Mr. Ringle received a telephone call from Mr. Michael Sturgeon, the attorney representing the only remaining defendant not represented by Messrs. Ringle and Thom. Mr. Sturgeon stated that Mr. Rook had offered to dismiss the pending charges against his client upon a forfeiture of $50 bail. The purpose of the call was to inquire whether the same offer had been made to the other fifteen defendants.

"Messrs. Ringle and Thom then attempted to determine whether this offer was available to their clients. Mr. Ringle was not able to contact Mr. Rook (who was out of the city during the three-day holiday weekend) until early Tuesday morning, the day of the trial, at which time he met with Mr. Rook in the latter's office.

"Mr. Ringle asked Mr. Rook whether the offer made to Mr. Sturgeon's client was available to the defendants represented by him and Mr. Thom. Mr. Rook told Mr. Ringle that the offer was not available to their fifteen clients so long as they were represented by Messrs. Ringle and Thom or by anyone associated with or sharing offices with either of them. Mr. Rook added that if Messrs. Ringle and Thom were to withdraw from the case and obtain other counsel, the offer of bail forfeiture would be available to the defendants through their new attorneys. When Mr. Ringle asked Mr. Rook to explain his position, Mr. Rook stated that Mr. Thom was involved in 'organized crime' and that he was upset with Mr. Ringle for saying 'bad things' about him.

"After this meeting, the pending trial was postponed, and Messrs. Ringle and Thom withdrew as counsel for the fifteen defendants. Mr. Sid Brockley, also a member of the Elks' Lodge, was substituted as counsel for all fifteen defendants after attempting to confirm by telephone that he would be acceptable to the Accused. Within a few days thereafter, the Accused allowed the fifteen defendants previously represented by Messrs.

[ 699 ]

Ringle and Thom to forfeit $50 bail and dismissed the criminal charges against them.

"Three of the defendants wrote to the Oregon State Bar complaining of Mr. Rook's conduct which one characterized as 'blackmail.' In a letter written to the Oregon State Bar in response to the first complaint, Mr. Rook stated that the reason for the refusal to deal with Messrs. Ringle and Thom was 'apparent connection between Mr. Thom and the organized crime aspect in the case.' This was the only reason for his refusal to deal with Messrs. Ringle and Thom given at that time."

Based upon the evidence offered to it, the Trial Board made the following Findings of Fact:

"(1) On and after November 12, 1974, the Accused, as District Attorney for Clackamas County, Oregon, refused to enter into plea negotiations with fifteen criminal defendants represented by Messrs. Phil H. Ringle, Jr. and Ronald D. Thom, or anyone sharing office space with them, unless said defendants dismissed their attorneys and employed other counsel.

"(2) No such condition was placed on plea negotiations with defendants not represented by Messrs. Ringle and Thom.

"(3) Following withdrawal by Messrs. Ringle and Thom from the case, plea bargains were immediately offered to and accepted by all but one of said defendants, charges having been dismissed as against the other.

"(4) The effect of the conditions placed by the Accused upon entering into plea negotiations, was to force Messrs. Ringle and Thom to withdraw from the case and to deprive said defendants of legal counsel of their choice.

"(5) The Accused was motivated in such conduct by frustration, animosity and a desire to punish which were personal to the Accused.

"(6) The Accused was not motivated in such conduct by factors having to do with the substantive merits of the individual criminal cases.

"(7) The Accused knew, or it was obvious, that the conditions placed upon entering into plea negotiations would serve merely to harass or maliciously injure the Oregon City Elks' Lodge, Messrs. Ringle and Thom and

fifteen criminal defendants, and said persons were in fact harassed and injured.

"(8) The Accused had reasonable cause to believe that illegal gambling was continuing at the Elks' Club after the police raid which gave rise to the criminal prosecutions here involved.

"(9) Messrs. Ringle and Thom were not involved in the commission of gambling offenses or other related unlawful acts at any time material to these proceedings.

"(10) Mr. Ringle did not at any time material to these proceedings interefere with or obstruct justice or contend that he represented people he did not in fact represent.

"(11) The Accused's conduct arose out of overzealousness in carrying out his prosecutorial duties, and not from any motive of personal gain or profit."

Based upon these Findings of Fact, and in response to the first charge by the Oregon State Bar, the Trial Board concluded that:

"By depriving said persons of the right to counsel of their choice, the Accused violated DR 1-102(A)(5) of the Code of Professional Responsibility in that such conduct was and is prejudicial to the administration of justice."[1]

■ We fully recognize, as contended by the accused and as a general proposition, that in order to discharge the duties of his office it is of importance that a prosecuting attorney be able to act "with independence and without fear of consequences."[2] As recognized by the accused, however, "that is not to say that a prosecutor is not answerable for unethical conduct." Indeed, the Supreme Court of the United States recently said that:

"* * * [T]he immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations

---

[1] DR 1-102 of the Code of Professional Responsibility provides that

"(A) A lawyer shall not:

"* * * * *

"(5) Engage in conduct that is prejudicial to the administration of justice."

[2] *Lundblade v. Doyle,* 376 F Supp 57, 60 (ND Ill 1974). *See also Newman v. United States,* 382 F2d 479, 481 (DC Cir 1967).

[ 701 ]

which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. \* \* \* Moreover, *a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers.* \* \* \*" (Emphasis added) *Imbler v. Pachtman,* 424 US 409, 428-29, 96 S Ct 984, 47 L ed 2d 128 (1976).

We also recognize, as contended by the accused, that disciplinary proceedings against an elected public official who is also an attorney must be supported by "clear and convincing evidence." After a review of the record in this case, however, we agree with the Trial Board in its conclusion that there was clear and convincing evidence in support of its findings, as well as its conclusion that the conduct of the accused was "prejudicial to the administration of justice," within the intended meaning of DR 1-102(A)(5).

In agreeing with that conclusion we need not decide whether, as contended by the accused, a district attorney is under no mandatory duty to engage in plea bargaining with any defendant in any criminal case. Neither need we decide whether, as also contended by the accused, the defendant in a criminal case has no constitutional right to be represented by any particular attorney or whether, in such an event, any such constitutional right was either waived or was not violated in this case or that any "interference" with any such right was "justified" under the facts of this case.

In Oregon the standards and requirements for plea bargaining are set forth by statute. ORS 135.405 provides, among other things, as follows:

"*Plea discussions and plea agreements.* (1) In cases in which it appears that the interest of the public in the effective administration of criminal justice would thereby be served, and in accordance with the criteria set forth in ORS 135.415, the district attorney may engage in plea discussions for the purpose of reaching a plea agreement.

[ 702 ]

"(2) The district attorney shall engage in plea discussions or reach a plea agreement with the defendant only through defense counsel, except when, as a matter of record, the defendant has effectively waived his right to counsel or, if the defendant is not eligible for court-appointed counsel, has not retained counsel.

"* * * * *

"(4) *Similarly situated defendants should be afforded equal plea agreement opportunities.*" (Emphasis added)

To approve of the conduct of the accused in this case would be to approve of a practice under which a prosecuting attorney could decide for himself, in cases involving more than one criminal defendant, which criminal defense attorneys he would deal with and which criminal defense attorneys he would refuse to deal with. He could enforce such a practice by the simple expedient of offering a plea bargain to one defendant and refusing to offer the same plea bargain to other "similarly situated defendants" represented by other attorneys unless they discharged such attorneys. For a defendant represented by such an attorney to refuse to discharge him would subject that defendant not only to a trial, but to the hazard of the imposition of the maximum penalty in the event of conviction.

Such a practice would not only violate the clear requirements of ORS 135.405(4), but would have other consequences which would be clearly "prejudicial" to the administration of criminal justice. Aside from the fact that such a practice would lend itself to possible corruption, we believe it to be so obvious as to require no further demonstration that the very integrity of the administration of criminal justice would be opened to question by such a practice.

There is no charge of corruption in this case. Indeed, the Trial Board found that the conduct of the accused "arose out of overzealousness" rather than "from any motive of personal gain or profit." Nevertheless, the Trial Board found that the accused

was motivated in such conduct not only by frustration, but also by "animosity and a desire to punish." After a review of the record, we agree with these findings by the Trial Board, as well as its conclusion that the conduct of the accused was "prejudicial to the administration of [criminal] justice," in violation of DR 1-102(A)(5).[3]

The Trial Board also concluded, in response to the second charge by the Oregon State Bar, that the conduct of the accused "served only to harass or maliciously injure another," in violation of DR 7-102(A)(1).[4]

In addition to denying this charge, the accused contends that DR 7-102(A)(1) was not intended to apply in such a case, but was "intended to deal with *prosecuting cases* merely to harass or injure *defendants.*" It is clear, however, from the terms of that rule that it not only provides that a lawyer shall not file a suit to harass or injure the defendant in that suit, but also provides that a lawyer shall not *"assert a position"* or *"take other action"* when he knows or when it is obvious that such *"action"* would serve merely to harass or maliciously injure *"another."*

In addition to its finding that "the Accused was motivated in said conduct by frustration, animosity and a desire to punish," the Trial Board found that "the motivation of the Accused's action had nothing to do with the merits of the case but was to punish the fifteen defendants or Messrs. Ringle and Thom or the Elks' or all of them by harassing the attorneys

---

[3]In view of our disposition of this charge we need not consider the separate charge by the Oregon State Bar that the conduct of the accused deprived defendants of the right to counsel. We agree with the Trial Board in its holding that this charge did not give rise to a "separate ethical breach."

[4]DR 7-102 provides that:

"(A) In his representation of a client, a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

involved."[5] After a review of the record we agree with these findings by the Trial Board, as well as with its conclusion that the conduct by the accused "falls within the plain language and intent" of DR 7-102(A)(1).[6]

As for the contention by the accused that the terms of DR 1-102(1) and (5) are unconstitutionally vague, we believe that as standards of professional conduct they are sufficiently definite for the purpose of a professional disciplinary proceeding. See *Board of Medical Examiners v. Mintz,* 233 Or 441, 448, 378 P2d 945 (1963). We have previously held that such a proceeding is not a criminal proceeding and that the technicalities of criminal law, which are properly invoked to safeguard the liberty of citizens, are not necessarily relevant in the investigation of unethical conduct by an attorney. See *In re Paul F. Gronnert,* 242 Or 233, 236, 391 P2d 772 (1965). See also *In re Reuben G. Lenske,* 269 Or 146, 158, 523 P2d 1262 (1974). This is particularly true where, as in this case, no First Amendment freedoms have been violated. *Cf. State v. Nelson,* 210 Kan 637, 504 P2d 211 (1972).

As previously stated, the Trial Board (one member dissenting) recommended that the accused be suspended for a period of six months. The Review Board (one member dissenting) agreed with the findings by the Trial Board that the accused was guilty of the charges against him, but concluded that his conduct was not so serious as to justify suspension and recommended that he be publicly reprimanded for his misconduct.

---

[5]The Trial Board also found that:

"* * * By his own testimony, he intended to deprive Mr. Thom of his employment in the case because of suspicions of criminal connections. In effect, the Accused set out upon something of a 'witch hunt' for Mr. Thom, and on extremely flimsy evidence, * * *."

[6]In view of the disposition of this charge we need not consider the fourth and final charge against the accused, that by his conduct he encouraged the continuance of criminal proceedings from motives of passion or intent. We agree with the Trial Board that it does not "give rise to an independent breach."

Although recommending a more severe penalty, the Trial Board made the following Findings of Fact, with which we agree:

> "The Accused's conduct arose out of overzealousness in carrying out his prosecutorial duties, and not from any motive of personal gain or profit."

We also think it fair to consider the fact that, to our knowledge, this is the first reported decision not only in Oregon, but in any other jurisdiction in the United States, involving a charge of misconduct against a prosecuting attorney in refusing to plea bargain with a criminal defendant.

Under all of the circumstances of this case, we agree with the recommendation by the majority of the Disciplinary Review Board of the Oregon State Bar that the appropriate penalty to be imposed upon the accused in this case be a public reprimand for his misconduct. This opinion shall serve as such a public reprimand.