**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**James C. STEFFES, Respondent.**

No. 98–1660.

Supreme Court of Iowa.

Jan. 21, 1999.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Lee H. Gaudineer of Austin, Gaudineer & Comito, L.L.P., Des Moines, for respondent.

TERNUS, Justice.

Respondent, James C. Steffes, took photographs of his partially-clothed client under the pretext of documenting her back injury. The Grievance Commission of the Supreme Court of Iowa found that his conduct violated Iowa Code of Professional Responsibility DR 1–102(A)(5) ("engag[ing] in conduct that is prejudicial to the administration of justice"), DR 1–102(A)(6) ("engag[ing] in any other conduct that adversely reflects on the fitness to practice law"), and DR 1–102(A)(7) ("engag[ing] in sexual harassment"). The Commission recommended a six-month suspension. Upon our de novo review, we agree that Steffes violated DR 1–102(A)(5), (6), and (7), but conclude that the egregious nature of his conduct warrants a longer suspension. Therefore, we suspend his license to practice law indefinitely, with no possibility of reinstatement for two years.

## I. Scope of Review.

We review the Commission's findings in lawyer disciplinary matters de novo. *See Committee on Prof'l Ethics & Conduct v. Williams*, 473 N.W.2d 203, 205 (Iowa 1991). The charges must be established by a convincing preponderance of the evidence. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996). This quantum of proof is "something less than required in a criminal prosecution, and is something more than is required in a civil proceeding." *Id.*

## II. Facts.

We find the following facts upon our de novo review of the record. James C. Steffes is an attorney who has been licensed to practice law in Iowa since 1972. He has worked as a county attorney and as a legal services attorney, but most recently has been engaged in the practice of law in Creston, Iowa. Although he has a general practice, it is heavily concentrated in criminal defense work.

In 1997, Steffes was appointed to represent a thirty-seven-year-old woman, whom we shall call "Gail Post," on several serious drug charges. The authorities had discovered seventeen marijuana plants in Post's house upon execution of a search warrant, and the charges against her included one for possession of marijuana with the intent to deliver. Post told Steffes at their first meeting that the plants were for her own personal use, as she suffered from back problems and used the marijuana for pain relief. Steffes suggested that she obtain some documentation from her chiropractor to support her claim of back injuries and resulting pain.

At some later date, Post returned to Steffes's office to discuss defense strategies. Post had not yet obtained any documentation from her chiropractor, but she offered to get her x-rays from the hospital. Steffes then suggested that he take some pictures of her back so they could be used to demonstrate to the jury where her pain was. At the hearing, Steffes did not deny that there were no visible marks or scars on Post's back from the injuries or to indicate the site of her ongoing pain.

Steffes proceeded to retrieve a Polaroid camera from his filing cabinet. He asked Post to expose her back, which she did. Steffes asked ·her to unhook her bra; she complied. As Post stood in this state of partial undress, Steffes walked over to her and pulled her shorts and underwear down to ·her knees, and then stepped back to take the pictures. After taking a picture of her back, Steffes requested that Post turn so Steffes could take a side view of the curvature of her spine. When he asked her to move her arms up, she hesitated, afraid that this movement would lift up her bra also. Post was confused by what was happening. She stated at the hearing:

> I was in trouble. He was court-appointed.... I thought because of my mental problems before with a suicide attempt and that, that if I tried to say—you know, just run out of there and say he's crazy, he's trying to take a picture of my body, then nobody would believe me because of the problems I had had in the past.

Steffes told her that the pictures would be helpful to influence the jury if the jurors were mostly male because Post had a "nice body."

During an arraignment on a later-filed charge, Post asked that Steffes return the photos to her. Although he hesitated, he gave them to her. He suggested that she destroy them because if the county attorney filed a motion to produce, they would have to give him the photos and the pictures would be introduced as evidence. Steffes obtained a pair of scissors for Post to use to cut up the pictures; she pretended to do so. Later that same day, Steffes came to Post's house with a motion to produce that had been filed by the county attorney that morning. Post did not, however, give Steffes the pictures.

The two pictures were introduced into evidence at the hearing before the Commission. One picture shows Post's bare back. The second is not a side view, as Steffes represented to Post it would be. Rather, it is a frontal view, showing Post's exposed breasts and pubic area.

At the disciplinary hearing, Steffes did not deny taking the pictures. He admitted that he thought some jurors might be influenced in his client's favor by viewing pictures of her in the nude. Although he denied approaching his client during the picture-taking session, claiming that he stayed behind his desk, the varying angles of the pictures belie this version of the events.

### III. *Ethical Violations.*

■ A. *DR 1–102(A)(5)—conduct prejudicial to the administration of justice.* Although the factual pattern before us is unusual, there is no typical form of conduct that prejudices the administration of justice. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Polson,* 569 N.W.2d 612, 613 (Iowa 1997) (attorney defied court's orders); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman,* 557 N.W.2d 94, 96 (Iowa 1996) (attorney made false statement to the Commission); *Committee on Prof'l Ethics & Conduct v. Williams,* 473 N.W.2d 203, 204 (Iowa 1991) (attorney attempted to bribe a deputy sheriff). The common thread in the cited cases is that in each one, the attorney's act hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.

An examination of the facts before us reveals the same effect. Steffes's conduct placed his client, a woman without means to provide for her own defense, at his mercy. He took advantage of a person in a very vulnerable state: Post had no money, had filed for bankruptcy, had attempted suicide, and was using drugs. *See* Iowa Code of Professional Responsibility EC 5–25 (recognizing "[t]he unequal balance of power in the attorney-client relationship" and "the client's potential vulnerability," especially when the client is facing criminal charges). After this incident, Post was uncomfortable going to Steffes's office and therefore did not seek advice from him relative to the pending criminal charges against her. Thus, Steffes's actions were prejudicial to the administration of justice because they impeded his client's access to effective legal representation. We agree with the Commission that Steffes violated DR 1–102(A)(5).

■ B. *DR 1–102(A)(6)—conduct adversely reflecting on the fitness to practice*

law. This court has stated that "[a]ny violation of the Code of Professional Responsibility necessarily reflects adversely on the fitness of an attorney to practice law." *Committee on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285 (Iowa 1979). In cases specifically involving sexual misconduct or improprieties with a client or member of the public, we have found a violation of DR 1–102(A)(6). *E.g., Committee on Prof'l Ethics & Conduct v. Barrer*, 495 N.W.2d 756, 757 (Iowa 1993) (attorney made obscene phone calls to teenage boys); *Committee on Prof'l Ethics & Conduct v. Hill*, 436 N.W.2d 57, 58 (Iowa 1989) (*Hill I* ) (attorney accepted client's offer to exchange sex for money); *Committee on Prof'l Ethics & Conduct v. Vesole*, 400 N.W.2d 591, 591 (Iowa 1987) (attorney indecently exposed himself to women); *Durham*, 279 N.W.2d at 285 (attorney engaged in sexual contact with client incarcerated at state penitentiary).

Ethical Consideration 1–5 states: "A lawyer should be temperate and dignified, and should refrain from all illegal and morally reprehensible conduct." Iowa Code of Professional Responsibility EC 1–5. Moreover, a client has the right to expect that his or her attorney will act in the client's best interests and not exploit the relationship. *See Hill I*, 436 N.W.2d at 59. When an attorney's conduct cannot fairly be characterized as temperate and dignified and crosses the line into professional impropriety, such conduct reflects adversely on the attorney's fitness to practice law. *See Durham*, 279 N.W.2d at 285.

We think Steffes's actions in taking nude photos of his client were intemperate and undignified at a minimum. Not only were these actions improper, they were totally unjustified as a means to defend his client. Steffes's bold exploitation of his professional relationship with a vulnerable client clearly reflects adversely on his fitness to practice law. We conclude he violated DR 1–102(A)(6).

C. *DR 1–102(A)(7)—sexual harassment or other unlawful discrimination.* The Commission found that Steffes had violated the prohibition against sexual harassment contained in DR 1–102(A)(7).[1] Steffes argues that this disciplinary rule applies only to workplace discrimination.

DR 1–102(A)(7) was adopted in response to a recommendation made by the Equality in the Courts Task Force. *See Final Report of the Equality in the Courts Task Force, State of Iowa* 87 (1993). This task force was established by the Iowa Supreme Court to study race/ethnicity and gender bias in Iowa's court system. *See id.* at 1. The report reveals that the recommendation to amend the Code of Professional Responsibility by the adoption of DR 1–102(A)(7) was made in the context of the task force's study of courtroom and professional interactions. *See id.* at 41–92. The report addresses not only sexual discrimination in the workplace, but also discriminatory treatment received by women in the courtroom and from the legal system in general.

Thus, the history of DR 1–102(A)(7) does not support a conclusion that its prohibitions are directed solely to an employment situation. Additionally, the rule itself is quite broad, referring to sexual harassment or discrimination "in the practice of law." Iowa Code of Professional Responsibility DR 1–102(A)(7). Finally, we think an attorney's sexual harassment of a client is just as unprofessional as the same treatment of an employee or partner. Therefore, we reject Steffes's argument that DR 1–102(A)(7) applies only to workplace discrimination.

The question remains, then, whether Steffes's actions constitute sexual harassment. Black's Law Dictionary defines the term "sexual harassment" as including "sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature." *Black's Law Dictionary* 1375 (6th ed.1990). We think Steffes's act of photographing his partially-clothed client under the pretext that the photographs would document her back injury and/or favorably im-

1. DR 1–102(A)(7) states that an attorney shall not [e]ngage in sexual harassment or other unlawful discrimination on the basis of sex, race, national origin, or ethnicity in the practice of law or knowingly permit staff and agents subject to the lawyer's direction and control to do so.

press male jurors in her criminal trial constitutes physical conduct of a sexual nature. We can conceive of no relationship between the *frontal* photograph showing his client's exposed breasts and pubic area, and a purported documentation of her *back* injury. Nor do we understand how any competent attorney could conclude that his client's "nice body" would be admissible evidence in her trial on drug charges. Given these circumstances, we conclude the photographs were sexual in nature, taken to satisfy Steffes's own prurient interests. We hold, therefore, that Steffes violated DR 1–102(A)(7) by engaging in sexual harassment of his client.

### IV. *Discipline.*

The Commission recommended that Steffes's license to practice law be suspended for six months. We give this recommendation respectful consideration, but we are not bound by it. *See Williams,* 473 N.W.2d at 205.

A review of our prior cases involving sexual misconduct reveals that the length of suspension varies depending upon the circumstances of the case. *E.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hill,* 540 N.W.2d 43, 43 (Iowa 1995) (twelve-month suspension for making inappropriate sexual advances toward client); *Hill I,* 436 N.W.2d at 58–59 (three-month suspension for accepting vulnerable client's offer to have sex in exchange for money); *Barrer,* 495 N.W.2d at 759–60 (two-year suspension for making obscene phone calls to teenage boys); *Vesole,* 400 N.W.2d at 591, 593 (three-year suspension for repeated instances of indecent exposure); *cf. Durham,* 279 N.W.2d at 285–86 (reprimand of attorney who engaged in inappropriate, but consensual, physical contact with inmate at state penitentiary).

The facts of this case are very disturbing for several reasons. As in *Hill I,* Steffes exploited a very vulnerable client for his own sexual gratification. Second, Steffes tried to get his client to destroy the photographs—uncontrovertible evidence of his professional impropriety—by telling her that the county attorney would introduce them as evidence at her criminal trial, a patently absurd proposition. And finally, in arguing for leniency before the Commission, Steffes attempted to shift the focus to the bad character of his client and her failure to actively resist his requests or exhibit emotion when she was photographed. He apparently holds the belief that Post was not worthy of the respect and loyalty an attorney owes a client, and that the event was not sufficiently traumatizing to warrant a severe sanction. We find these suggestions unpersuasive.

Steffes's ethical obligation to Post did not depend on her financial situation, or whether she used drugs, or whether she had the misfortune to suffer from mental illness. Nor did it depend on whether Post was guilty of unrelated criminal conduct. Most certainly, his client's failure to actively resist or register horror at her attorney's plainly inappropriate requests do not serve to mitigate in any degree the reprehensible nature of Steffes's conduct.

Considering the nature of Steffes's ethical violations and the fact that he has no prior disciplinary record, we suspend Steffes's license to practice law indefinitely with no possibility of reinstatement for two years from the filing of this opinion. Upon application for reinstatement, Steffes shall have the burden to prove he has not practiced law during the period of suspension and that he has met the requirements for client notification set forth in court rule 118.18. *See* Ct. R. 118.13(a)(2). We also agree with the Commission's recommendation that as a condition of license reinstatement, Steffes will be required to demonstrate that he has completed formal training in sensitivity to sexual harassment issues to prevent a reoccurrence of the conduct that resulted in his suspension. Costs are taxed to respondent. *See* Ct. R. 118.22.

**LICENSE SUSPENDED.**