## IN RE DISBARMENT OF SAMUEL L. FRIEDMAN.[1]

May 15, 1931.

No. 28,224.

[1]Reported in 236 N. W. 703.

*Oscar G. Haugland, Loring M. Staples,* and *Walter W. Finke,* for state board of law examiners.

*Harry J. Bikson,* for respondent.

PER CURIAM.

In the above entitled matter Honorable Hugo O. Hanft, one of the judges of the second judicial district, was appointed referee to take the testimony and report findings of fact to this court; and said referee having made and filed findings, and the arguments thereon having been heard, it is considered that the findings are sustained by the evidence. The facts found relative to the accusations made against respondent, an attorney at law of this state, are in substance these:

■ Through respondent, Jennie Cowl had obtained a $2,000 mortgage at a price which yielded her 12 per cent interest. She and her husband, Harry Cowl, had been clients of respondent. When on April 21, 1927, that mortgage was paid, respondent informed Mrs. Cowl that he could procure a better investment for a larger sum. Six days later she turned over to him $500 in addition to the $2,000 he got when the mortgage mentioned was paid. On May 20, 1926, in some litigation for Mr. Cowl, respondent had procured from him $3,000 for use in connection with the suit for specific performance of an option in a lease, which money respondent has represented would have to be paid into court. It was never so paid in nor returned to the client. After this had happened and on April 26, 1927, respondent gave Mrs. Cowl his note for $5,500, telling her the note was for added security for the money until he could secure a desirable investment for the same. On April 23, 25, and 28, 1927, he turned over to Balkin Construction Company, a partnership composed of himself and one Balkin, said $5,500 with $500 of his own funds, without taking any security or evidence of indebtedness from the partnership. Mrs. Cowl did not know until some time in March, 1929, what use he had made of the money. It has not been repaid. The partnership has now no assets whatever.

In May, 1928, Mrs. Cowl turned over to respondent the sum of

$1,900 with which he agreed to purchase for her a contract for deed for $2,000. On June 1, 1928, he. gave her his note for the latter sum, stating this was for additional security, as it would take several months before the papers could be arranged for. He placed the $1,900 in his own bank account and by June 11, 1928, had checked out of the account all except $1.31. Later he turned over to Mrs. Cowl his own contract with one Abrams, having an equity of about $1,000, and returning to her $431.

■ November 13, 1928, respondent received $750 in settlement for the death in an automobile accident of a child of Rose Michalowitz and her husband, deposited the money in his own bank account, and within a week checked out all but $174.44. In December, 1929, in an application before Judge Waite of the district court of Hennepin county by Rose Michalowitz for mother's pension aid, respondent was called as a witness and knowingly swore falsely regarding the receipt of this money until confronted with documents which disclosed the true facts. He then attempted to justify his perjury and the retention of the money by claiming that he had tried to further his client's application for mother's aid pension by concealing the existence of the money.

■ One Mrs. Morstain had foreclosed a $3,000 mortgage on property in Minneapolis owned by one Mr. Halperin of New York. Respondent was employed by Halperin to effect redemption and received for that purpose $3,450. Respondent used $3,000 thereof for his own purposes, paid Mrs. Morstain the balance, and covered up the transaction by causing to be filed on May 6, 1929, in the office of the register of deeds of Hennepin county, a satisfaction of the mortgage to which the name of Mrs. Morstain was forged, and taking as notary public a false acknowledgment of her signature. That when he so did he knew that the signature of Mrs. Morstain was forged and that the certificate of acknowledgment was false. This forgery was discovered soon after the filing of the satisfaction.

■ Respondent, on November 22, 1927, caused to be filed a personal guardian's bond in the probate court of Hennepin county where he was guardian of an incompetent, knowing that two signa-

tures thereon were forgeries, viz. a surety and a witness, and to the execution of which bond by the surety respondent had made a false certificate of acknowledgment as a notary public.

The findings, more in detail than above set out, are in no manner questioned, and respondent's attorney on the hearing in this court frankly conceded that the professional misconduct proved merits suspension, but pleads for milder discipline than disbarment. Extenuation is sought in the fact that when two large unfortunate building contracts of the partnership swept away the possessions of both the firm and the individual members respondent was placed in such financial distress and frenzy of mind that his judgment as to lawful and proper means of relief or escape was dethroned. But the several delinquencies referred to were not committed on the spur of the moment; there was time for reflection between each; and some are of such a grave character affecting the administration of justice and public records that in fairness to an honorable profession and the public generally the only discipline possible is disbarment.

Respondent by his answer invoked the statute of limitation contained in G. S. 1923 (1 Mason, 1927) § 5697, as a bar. It is enough to say that neither the findings nor the record bring out clearly any one of the charges to be barred by that provision. In re Disbarment of Cherry, 166 Minn. 448, 208 N. W. 197, 45 A. L. R. 1108; In re Disbarment of Hage, 171 Minn. 434, 214 N. W. 663. Without pointing out any charge wherein the provision of the statute cited is a bar, the petitioners challenge the constitutionality of the statute and the authority of the legislature to enact laws which limit or deprive the courts of their inherent authority to admit, discipline, and disbar attorneys, officers of the court. No brief or legal argument has been presented on the part of respondent in support of the limitation of the authority of the legislature in the premises. And such grave matters as the constitutionality of the section referred to and a possible conflict between the authority of the courts and that of the legislative branch of government respecting the admission and the discipline of attorneys should not

354

be determined except upon full arguments and in a case where a decision of such important legal issues is essential. This is not such a case.

Upon the findings of the referee and this record, the order of this court is that respondent be disbarred and his name be stricken from the roll of attorneys of this state.

Let judgment be entered accordingly.

