## IN RE DISBARMENT OF MASON M. FORBES.[1]

November 23, 1934.

No. 29,402.

*Oscar G. Haugland,* for state board of law examiners.
*Fryberger, Fulton & Boyle,* for respondent.

### PER CURIAM.

The state board of law examiners filed a petition and accusation in this court for the discipline of Mason M. Forbes, an attorney of this state. The matter was referred to a judge of the district court, as referee, to make findings of fact.

The respondent was county attorney of St. Louis county, and the peculations alleged in the petition were in connection with that office.

To reimburse employes of the county attorney's office for moneys expended in connection with their official duties, the county required such employes to obtain a receipt from the party with whom money was spent, attach the receipt to a verified statement of the expenditure, and at the end of the month submit both to the county board, who in turn passed upon the claim and repaid the employe.

[1]Reported in 257 N. W. 329.

In examining the books of the officials of St. Louis county one of the public examiners noticed that some of the receipts obtained from the post office by respondent for stamp expenditures had evidently been altered. The examiners called upon respondent and asked him whether the figures on the receipts had been altered or changed, and, according to their testimony, he emphatically denied having made any alterations or changes. Forbes, realizing that these alterations, which he afterward admitted making, would appear in the state examiner's report, resigned his office. This proceeding was subsequently commenced.

The accusation alleges, and respondent now freely admits, that several of the receipts, obtained from the post office by him in return for purchases of stamps, were altered. It is charged also by the accusation, but vigorously denied by respondent, that the alterations were made with intent to defraud St. Louis county.

Forty-nine receipts, signed by clerks of the Duluth post office, were admitted in evidence, 44 of which, according to a handwriting expert, had been altered, most of them being raised from $5 to $15. Respondent stated that it was his custom to buy stamps for office use whenever, in passing the post office, he remembered that his office was short of stamps. If he had a receipt form with him he would obtain a receipt for the purchase; but in many instances, not having a receipt form with him, he would keep the expenditure in mind until another purchase of stamps was made, take a receipt for that purchase, and raise the receipt to include the amount spent on the previous purchase or purchases for which no receipt had been obtained. His only justification for such action was that the custom of the office in regard to the purchase and use of stamps was grossly lax and careless. Testimony of the assistant county attorneys who, it appears, handled their private practice from the county office, was to the effect that they used the county's stamps for letters written in connection with their practice and their personal mail. The above facts were presented to the grand jury, which refused to indict Forbes but censured him severely for the laxity with which this particular fund was handled.

546

The referee in the present proceeding found that there was no intent upon respondent's part to defraud the county; that, while he had altered the receipts, he derived no personal profit therefrom; and that, while he filed the altered receipts and verified statements upon which he received cash payment, at no time was a receipt, as altered, in excess of the amount paid by Forbes for stamps.

A careful examination of the transcript brings to light many interesting facts. Over a period of 28 months, from January 1, 1929, to April 30, 1931, the amount paid out for stamps, as evidenced by the receipts, was $680, or an average monthly expenditure of nearly $25 per month. Testimony of a member of the St. Louis county auditor's office shows an expenditure of $53.16 for stamps for the 26-month period following April 30, 1931, or an average of a little more than $2 per month. A careful count of all the correspondence that went out of the county attorney's office from January 1, 1929, to April 30, 1931, plus a liberal allowance for stamped inclosures, added to the stamps used by the assistants for their private correspondence, would warrant an expenditure of about $5 per month. It is true that the small average monthly expenditure for the months following April 30, 1931, after Forbes' resignation, probably was in part occasioned by the severe criticism directed at the county attorney's department after discovery of the altered receipts. The fact remains, however, that there is a discrepancy of nearly $20 per month between the amount of stamps used as figured by the amount of correspondence and the amount billed to the county.

It is admitted by all witnesses that one stenographer took care of all the work in the office, including that of the assistants in their private practice. This included all the correspondence, typing the transcripts and trial briefs, and all the stenographic work connected with the trials. It would seem that she would hardly have had sufficient time to write enough letters each day to account for the amount of postage that Forbes claims was used.

An examination of the receipts shows that the alterations were not readily discernible, evidencing respondent's intention to conceal the alterations. Further, there is a monotonous regularity in the manner in which the alterations were made. Almost invariably

Forbes would buy $5 worth of stamps and raise the amount of the receipt therefor to $15. He testified that it was only on the occasions that he forgot to take a receipt blank to the post office that he failed to obtain a receipt for his purchases; in other words, he forgot to take a receipt blank with him two out of every three times as a regular habit. It is also significant that the receipts were usually raised from $5 to $15, a change which was easy to make.

A careful scrutiny of the transcript compels the conclusion that respondent designedly altered the receipts and appropriated part of the money to his own use. No other conclusion can reasonably be drawn from the testimony.

For such misconduct it is therefore ordered and adjudged that Mason M. Forbes be disbarred from practicing law in this state and that his name be stricken from the roll of attorneys.