In re Petition for Disciplinary Action against Robert O. KNUTSON, an Attorney at Law of the State of Minnesota.

No. C5-86-1187.

Supreme Court of Minnesota.

May 1, 1987.

William J. Wernz, Director, Office of Lawyers Prof. Resp., Betty M. Shaw, Asst. Director, St. Paul, for appellant.

Robert O. Knutson, Eden Prairie, Wesley A. Anderson, St. Paul, for respondent.

## OPINION

PER CURIAM.

On July 14, 1986, the Director of the Office of Lawyers Professional Responsibility (Director) served a petition for disciplinary action on Robert O. Knutson (Knutson). Knutson's answer, dated August 1, 1986, contained motions to dismiss for lack of probable cause and for lack of jurisdiction. Supreme Court Referee James D. Mason heard Knutson's motions on October 10, 1986, and, on October 15, 1986, held an evidentiary hearing on the petition for disciplinary action.

The referee filed his findings of fact, conclusions of law, and recommendations, dated November 7, 1986. Because neither Knutson nor the Director ordered a transcript, the referee's findings of fact and conclusions of law are conclusive. Minn.R. Law.Prof.Resp. 14(d). The referee recommended that Knutson be publicly reprimanded, pay appropriate costs of this proceeding, be placed on a probationary status until April 16, 1990, on condition that Knutson engage a qualified tax preparer to assist him with his tax returns during the period of probation, and timely file all state and federal returns, and pay all taxes thereon, as they become due, and that, upon request of the Director, he be required to provide the Director with tax authorizations necessary for the Director to obtain verification from state and feder-

al authorities that the requisite tax returns have been filed and the taxes due have been paid in full.

We adopt the referee's recommendation.

Knutson was admitted to the practice of law in the State of Minnesota on October 21, 1966. He has practiced in various locations with various partners and associates, and currently practices in Eden Prairie, Minnesota. During the period 1981 to 1985, Knutson had various family problems, including his father's stroke, lingering illness, and death; his wife's cancer and subsequent surgery; and his daughter's three hospitalizations.

Knutson had sufficient income that he was required by federal law to file federal personal income tax returns for the years 1981, 1982, 1983, and 1984. On or before April 15, 1982, 1983, 1984, and 1985, Knutson filed applications for automatic extension of time to file federal individual income tax returns and paid amounts which he believed were equal to or greater than the amount of federal tax due on his income earned in 1981, 1982, 1983, and 1984.

Under federal law, if Knutson did not obtain further extensions, returns filed after June 15, 1982, August 15, 1983, August 15, 1984, and August 15, 1985, would not be timely filed. Knutson did not obtain further extensions. His 1981 and 1982 federal tax returns were filed in November, 1985, and his 1983 and 1984 federal tax returns were filed in December, 1985. All four returns showed a refund due. The referee found that failure to file timely federal tax returns for 1981, 1982, 1983, and 1984 violated DR 1–102(A)(5) and DR 1–102(A)(6) of the Minnesota Code of Professional Responsibility.

Similarly, Knutson had sufficient income that he was required to file state income tax returns for 1981, 1982, 1983, and 1984. The last dates for timely filing of these returns were April 15, 1982, 1983, 1984, and 1985, respectively. Knutson believed that he had sufficient deductions that no state tax would be due. He did not request extensions and did not file his 1981 and 1982 returns until November, 1985, and his 1983 and 1984 returns until December,

1985. These returns, indeed, showed no tax due. The referee also found that failure to file timely Minnesota income tax returns for 1981, 1982, 1983, and 1984 violated DR 1–102(A)(5) and DR 1–102(A)(6) of the Minnesota Code of Professional Responsibility.

Knutson also failed to pay his attorney registration fees when due. Fees that were due before April 1, 1982, 1983, and 1984 were not paid until January 23, 1985. Failure to pay attorney registration fees results in automatic suspension. Minn.R. Supreme Court Registration Attys. 3. Knutson, however, actively practiced law between April 1, 1982, and January 23, 1985. He changed his office location five times between 1981 and 1986. The referee found that Knutson did not receive actual notice of the registration fees due and that as soon as he was notified of his failure to pay these fees, he paid all accrued registration fees and the penalty charge, and was reinstated. The referee, however, found that Knutson's practice of law while suspended constituted a violation of DR 3–101(B) of the Minnesota Code of Professional Responsibility.

The referee recommended that Knutson's motion to dismiss the petition for lack of probable cause, his motion to dismiss for lack of jurisdiction because his conduct did not constitute violations, and his motion to dismiss for lack of jurisdiction because the charges were brought under the repealed Code of Professional Responsibility all be denied.

Knutson argues before this court, as he did in his motions, that probable cause and jurisdiction are lacking. He also claims that the rules that he is charged with violating are unconstitutional because they are overbroad and void for vagueness. Knutson further claims that the referee's recommended discipline is overly harsh.

Knutson claims that the Director lacks jurisdiction to charge him with violations of the Minnesota Code of Professional Responsibility (MCPR) because it was repealed effective August 31, 1985. He claims that he should have been charged instead under the Minnesota Rules of Pro-

fessional Conduct (MRPC), which were effective when he was charged.

■ This court, however, has disciplined attorneys under MCPR for conduct which occurred while MCPR was in effect even though the charges were brought after its repeal. *See In re Selb,* 395 N.W.2d 81, 82 (Minn.1986) (disciplining attorney under MCPR for conduct before September 1, 1985, and under MRPC for conduct continuing after that date); *In re Perry,* 393 N.W.2d 371, 371 (Minn.1986) (same); *see also In re Jones,* 383 N.W.2d 686, 687 (Minn.1986) (disciplining attorney for violations of MCPR on petition served October 28, 1985, after repeal of MCPR).

Knutson also argues that the Director does not have jurisdiction over his conduct regarding his tax returns. He bases this claim on his assertions that "there simply are no tax violations of a type required to support these charges"; that only "intentional failure to file and pay income taxes" is proscribed; and that there must be a conviction or admission of wrongdoing.

Knutson's claim that there are no tax violations of a type required to support charges ignores the referee's findings that Knutson's conduct with respect to both his state and federal taxes violated DR 1-102(A)(5) and DR 1-102(A)(6) of the Minnesota Code of Professional Responsibility. These findings are conclusive because neither Knutson nor the Director ordered a transcript. Minn.R.Law.Prof.Resp. 14(d).

■ As the referee noted, failure to file income tax returns has been grounds for attorney discipline since at least 1972. In that year we stated:

[W]e hold that the failure to file income tax returns represents a violation of a lawyer's oath of office and further represents a violation of the Code of Professional Responsibility * * *.

\* \* \* \* \* \*

Lawyers in this state should henceforth understand clearly * * * that disciplinary proceedings are mandatory in all cases of failure to file income tax returns.

*In re Bunker,* 294 Minn. 47, 53–55, 199 N.W.2d 628, 631–32 (1972). Since that time, we have frequently disciplined attorneys for failure to file income tax returns. *See, e.g., In re Piper,* 387 N.W.2d 882, 882 (Minn.1986); *In re Anastas,* 368 N.W.2d 271, 271–72 (Minn.1985); *In re Fitzgerald,* 366 N.W.2d 262, 262 (Minn.1985); *In re Larson,* 324 N.W.2d 656, 659 (Minn.1982); *In re Serstock,* 316 N.W.2d 559, 560–61 (Minn.1982).

Knutson also claims that his failure to file was not intentional and was, at most, negligent, and that therefore he is not subject to discipline. The referee, however, found not credible Knutson's claims that he did not know he needed to obtain further extensions if his federal returns were to be timely filed and that he was unaware of a requirement to file a state tax return. We have also stated that:

Any violation of the income tax laws represents a threat to the ability of our governmental units to function, *whether such action is done with corrupt intent or not.* In the case of a lawyer, it most certainly represents a clear violation of his oath to uphold the Constitution and the laws of the United States and the State of Minnesota.

*Bunker,* 294 Minn. at 50, 199 N.W.2d at 630 (emphasis added).

■ Knutson's other claim—that he cannot be disciplined for tax violations when he has not been convicted of and has not admitted to those violations—is also not supported by this court's decisions. The general rule is that an "attorney may be disciplined for actions which are illegal but do not result in a criminal conviction." *In re Hanratty,* 277 N.W.2d 373, 375 (Minn. 1979) (citations omitted). "Whether a respondent has already been convicted or may be convicted of a criminal offense in the future for the same actions is unimportant to a disciplinary proceeding." *Id.* at 376. The purpose of attorney discipline is not to enforce a criminal code, but is rather to investigate the conduct and fitness of one of the court's officers. *Ohio State Bar Ass'n v. Weaver,* 41 Ohio St.2d 97, 100, 322 N.E.2d 665, 667 (1975); *see also* Anno-

tation, *Effect of Acquittal or Dismissal in Criminal Prosecution as Barring Disciplinary Action Against Attorney*, 76 A.L. R.3d 1028 (1977) (majority rule is that acquittal in criminal proceeding does not bar disciplinary action arising out of substantially the same facts). This court has also accepted a stipulation in a failure-to-file-income-tax-returns case in which the lack of a criminal conviction was submitted as a mitigating factor. *See In re Anastas*, 368 N.W.2d 271, 271–72 (Minn.1985).

Knutson also claims that the Director lacks jurisdiction to charge him with unauthorized practice of law in violation of either MCPR DR 3–101 or MRPC 5.5. He distinguishes his failure to pay a fee to defray administrative expenses from the failure to meet qualification requirements for the practice of law.

Although the Rules of the Supreme Court for Registration of Attorneys do impose a fee to defray administrative expenses, those rules further provide:

> Upon failure to pay such [attorney registration] fee, the right to practice law in this state shall be automatically suspended, and no individual shall be authorized to practice law in this state or to in any manner hold himself out as qualified or authorized to practice law while in default in the payment of such registration fee. Any individual who shall violate this rule shall be subject to all the penalties and remedies provided by law for the unauthorized practice of law in the State of Minnesota.

Minn.R.Supreme Court Registration Attys. 3. Both the MCPR and the MRPC proscribe the unauthorized practice of law. *See* MCPR DR 3–101(B); MRPC 5.5. Disciplinary Rule 3–101(B) of the Minnesota Code of Professional Responsibility states: "A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction." Practicing law in violation of the Rules of the Supreme Court for Registration of Attorneys is practicing in violation of "regulations of the profession" and is, therefore, a violation of DR 3–101(B) or Rule 5.5, which the Director has the juris-

diction to enforce. *See generally* Minn.R. Law.Prof.Resp. Furthermore, practicing while under suspension for failure to pay attorney registration fees has been one of the bases for discipline of other attorneys. *See In re Fitzgerald*, 366 N.W.2d 262, 262 (Minn.1985); *In re O'Brien*, 362 N.W.2d 307, 308 (Minn.1985); *see also In re Jorissen*, 391 N.W.2d 822, 823–25 (Minn.1986) (practicing while under disciplinary suspension violates DR 3–101(B)).

Knutson claims that the rules he is charged with violating, DR 1–102(A)(5) and (6) and DR 3–101(B), are overbroad and void for vagueness. We have recognized, however, that "necessarily broad standards of professional conduct" are constitutionally permissible. *In re N.P.*, 361 N.W.2d 386, 395 (Minn.1985), *appeal dismissed*, — U.S. —, 106 S.Ct. 375, 88 L.Ed.2d 330 (1985); *In re Gillard*, 271 N.W.2d 785, 809 n. 7 (Minn.1978). The United States Supreme Court has also noted that "it is difficult, if not impossible, to enumerate and define, with legal precision, every offence for which an attorney or counsellor ought to be removed." *Ex parte Secombe*, 60 U.S. (19 How.) 9, 14, 15 L.Ed. 565 (1856).

Subdivisions 5 and 6 of DR 1–102(A) provide:

> (A) A lawyer shall not:
>
> \*   \*   \*   \*   \*   \*
>
> (5) Engage in conduct that is prejudicial to the administration of justice.
> (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

MCPR DR 1–102(A)(5), (6). We have held that:

> Disciplinary Rules 1–102(A)(5) and (6) do no more than reflect the fundamental principle of professional responsibility that an attorney, as an officer of the court, has a duty to deal fairly with the court and the client. This duty embraces all of the ethical strictures of the code of professional responsibility. Read in conjunction with the other disciplinary rules, we conclude, as have other courts, that these phrases are sufficiently well defined to satisfy due process. *See In re*

*Keiler,* 380 A.2d 119, 126 n. 7 (D.C.1977); *Committee on Professional Ethics & Conduct v. Durham,* 279 N.W.2d 280, 283 (Iowa 1979); *State v. Nelson,* 210 Kan. 637, 639, 504 P.2d 211, 214 (1972); *Louisiana State Bar Ass'n v. Jacques,* 260 La. 803, 823, 257 So.2d 413, 420 (1972); *In re Rook,* 276 Or. 695, 705–06, 556 P.2d 1351, 1357 (1976); *Howell v. State,* 559 S.W.2d 432, 436 (Tex.Civ.App. 1977).

*In re N.P.,* 361 N.W.2d at 395.

■ Similarly, DR 3–101(B) provides that: "A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction." MCPR DR 3–101(B). Knutson claims that this does not put one on notice that practicing while suspended for nonpayment of attorney registration fees would violate this rule. The rules regarding payment of registration fees, however, clearly state that one who violates the rule "shall be subject to all the penalties and remedies provided by law for the unauthorized practice of law in the State of Minnesota." Minn.R.Supreme Court Registration Attys. 3.

■ Knutson further claims that the panel composition and the bias of one of the panel members violated his constitutional right to due process of law. Specifically, he claims that "the nature of the matters involved in this proceeding were too complex legally to be determined by a panel consisting of a majority of laypersons." "There is no question that attorneys subject to disciplinary investigations are entitled to due process," *In re N.P.,* 361 N.W.2d at 394 (citing *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968)), and the United States Supreme Court has emphasized the notice and opportunity to be heard components of due process when assessing the constitutionality of disbarment proceedings. *See In re Ruffalo,* 390 U.S. at 550, 88 S.Ct. at 1226; *see also* Annotation, *Suspension or Revocation of Medical or Legal Professional License as Violating Due Process— Federal Cases,* 98 L.Ed. 851 (1954). The referee, however, rejected Knutson's claim and concluded that:

> Rule 4(d) of the Rules on Lawyers Professional Responsibility provides for a panel " * * * of not less than three board members and at least one of whom is a non-lawyer, * * *." This authorizes a panel to consist of either two lay persons or two lawyers. There is no constitutional requirement that a majority of lawyers constitute the panel.

Knutson's argument appears to ignore the fact that all panel members, lawyers and non-lawyers, are members of the Board of Lawyers Professional Responsibility and are appointed by this court. *See* Minn.R.Law.Prof.Resp. 4. Both their appointment and their experience as board members suggest that they would be able to determine the issues involved in this proceeding. This type of preliminary hearing has been analogized to grand jury hearings, *see Attorney Grievance Comm'n v. Strathen,* 287 Md. 111, 117, 411 A.2d 102, 105 (1980), and there the issues are also determined by laymen. *But see Kurowski v. Kittson Memorial Hospital,* 396 N.W.2d 827, 830 (Minn.1986) (laypersons who comprise rehabilitation review panel should not be determining legal issues involving the application of legal precedent).

With respect to Knutson's claim that he was denied due process because of one panel member's bias, the only evidence is Knutson's and his attorney's affidavits. The referee noted that "[t]he allegation of bias of a panel member involves alleged bias *during* the panel hearing; no objection to panel member Clarence Peterson was made prior to the panel hearing, nor were there any objections to any questions asked by panel member Peterson during the hearing" (emphasis in original).

Knutson claims that Peterson's alleged personal bias was exhibited by his conduct in questioning respondent during the panel hearing. Attorneys in other jurisdictions have made similar claims. In one of these cases, the Michigan Supreme Court concluded: "We find no due process error in a member of the hearing panel questioning respondent regarding his actions in the in-

stant matter. It is clear the panel member was only attempting to sharpen the issue and ascertain the facts. This does not constitute bias or prejudice." *In re Crane,* 400 Mich. 484, 493, 255 N.W.2d 624, 627 (1977) (citation omitted); *see North Carolina State Bar v. Braswell,* 67 N.C.App. 456, 460, 313 S.E.2d 272, 275 (1984) ("[w]hile we find [the questions] probing and the questioning vigorous, we believe that the Committee's actions were well within the bounds of its discretion.")

■ Although this court has final responsibility for appropriate discipline of attorneys, it places great weight upon the recommendations of the referee. *In re Fling,* 316 N.W.2d 556, 559 (Minn.1982); *In re Scallen,* 269 N.W.2d 834, 841 (Minn. 1978). Here, the referee recommended that Knutson be publicly reprimanded; that he pay costs; that he be placed on probation until April 16, 1990; that he engage a qualified tax preparer during his probationary period and timely file and pay his taxes; and that he provide the Director with authorizations to enable him to verify compliance. Knutson argues that this recommended discipline is overly harsh and disproportionate to that imposed in other cases.

That is not the case. We have imposed both a suspension and probation on attorneys who did not timely file their income tax returns. *See, e.g., In re Jones (Jones II),* 383 N.W.2d 686 (Minn.1986); *In re Anastas (Anastas II),* 375 N.W.2d 483 (Minn.1985); *In re Southwell,* 373 N.W.2d 592, 592–93 (Minn.1985); *In re Fitzgerald,* 366 N.W.2d 262, 262, 264 (Minn.1985). Jones was suspended indefinitely, but could reapply after 90 days. Anastas was suspended for 30 days. Both Jones and Anastas, however, were already on probation for tax and other offenses when the misconduct for which they were suspended occurred. *See Jones II,* 383 N.W.2d at 687; *Anastas II,* 375 N.W.2d at 484.

This court has also ordered public reprimand or probation without a suspension for failure to file income tax returns. *See, e.g., In re Piper,* 387 N.W.2d 882, 882 (Minn. 1986); *In re Anastas (Anastas I),* 368

N.W.2d 271, 272 (Minn.1985) (public reprimand and two years probation); *In re Jones (Jones I),* 341 N.W.2d 881, 882 (Minn. 1984) (public reprimand and two years probation). Because of the mitigating factors—no complaints regarding Knutson's law practice or his handling of funds, his excellent previous reputation, no taxes due, and numerous family problems—we agree with the referee and conclude that the following sanctions are appropriate:

1. Respondent is publicly reprimanded.

2. Respondent is placed on probation until April 16, 1990, on condition that he engage a qualified tax preparer to assist him with his tax returns during the period of probation, and timely file all state and federal returns, and pay all taxes thereon as they become due, and that, upon request of the Director, he be required to provide the Director with tax authorizations necessary for the Director to obtain verification from state and federal authorities that the requisite tax returns have been filed and the taxes due have been paid in full.

3. Respondent is to pay $500 in costs.

It is so ordered.