In re Petition for DISCIPLINARY AC-TION AGAINST John R. WYLDE, Jr., an Attorney at Law of the State of Minnesota.

No. C8–88–782.

Supreme Court of Minnesota.

April 20, 1990.

William J. Wernz, Director of Lawyers Professional Responsibility, Betty Shaw, Sr. Asst. Director, St. Paul, for appellant.

Jack S. Nordby, Meshbesher, Singer & Spence, Ltd., Minneapolis, for respondent.

PER CURIAM.

The referee, appointed by this court to make fact findings, conclusions of law and to recommend appropriate discipline, found that respondent, John R. Wylde, Jr., had failed to timely file and pay personal income taxes for the tax years of 1981, 1982, 1983 and 1984. The referee recommended a conditional probation as the appropriate discipline. Thereafter, the Director of the Lawyers Professional Responsibility Board and the respondent, John R. Wylde, Jr., entered into and filed with this court a stipulation which incorporated that recommended disposition. Rather than accept the recommendation and the stipulation, because of some concerns we had with the appropriateness of the discipline, we ordered briefing and oral argument. Having had the advantage of the briefs and arguments of counsel, we are now willing to accept generally the referee's recommendation, and the parties' stipulation, with a slight modification.

Because neither party ordered a transcript of the proceedings before the referee, his findings of fact are binding. Rule 14, Rules on Lawyers Professional Responsibility (RLPR). Those findings establish that respondent, whose practice was substantially concentrated in the area of handling litigation with an emphasis on criminal defense work, has been admitted to the practice of law in this state since 1968. During the course of that practice, he had no prior disciplinary record until the institution of the present proceedings which arose as a consequence of his failure to timely file federal and state income tax returns for the tax years 1981, 1982, and 1983. Nonetheless, before these disciplinary proceedings were instituted, respondent in 1984 had retained an accountant who had

prepared and filed the delinquent 1981 and 1982 federal returns. The accountant had also prepared state returns for those years but respondent did not file them. Later, the Minnesota Department of Revenue prepared and filed respondent's 1981 and 1982 returns for him pursuant to the procedure set forth in Minn.Stat. § 290.47 (1988). Although both state-prepared and filed returns showed personal state income taxes due from respondent, the Minnesota returns for those two years, which had been prepared (but not filed) by respondent's accountant, revealed that respondent owed substantially more taxes for those years than was shown on the state's constructed returns. Ultimately, respondent paid the taxes determined by the commissioner's returns for those years but he has not yet paid the additional amount his accountant determined he owed. Respondent also filed his 1983 federal and state personal income tax returns late, in 1985, but all taxes determined due for that year have been paid. In addition to failing to timely file annual returns from 1981 through 1984, during those years respondent paid no withholding or estimated taxes as required by law. It was only after these disciplinary proceedings had been commenced that respondent, in 1987, paid the 1984 federal and state income taxes.

Although the referee was not unmindful of the 18 year old dictum, first enunciated in *In re Bunker*, 294 Minn. 47, 199 N.W.2d 628 (1972), to the effect that violation of obligations with respect to filing and paying personal income taxes would ordinarily result in disbarment or suspension, in making his recommendation for discipline, he noted certain factors in this case which he felt mitigated against the imposition of the extreme sanction of suspension.[1] Among the mitigating factors the referee found

was the fact that neither federal nor state criminal proceedings ever had been instituted against respondent by the taxing authorities; that the respondent had retained an accountant to prepare and file the delinquent 1981 and 1982 returns *before* the Director had instituted these proceedings; that, in fact, respondent had paid all delinquent taxes and penalties for all the tax years involved—with the exception of the additional state income tax owing for 1981 and 1982 as determined by respondent's accountant; that respondent had no prior disciplinary record for more than 20 years and has been and is held in high esteem by judges and peers for professional competence. Additionally, the referee recognized respondent's contribution of time and services in pro bono work, church and community affairs, as well as in various professional associations. The referee also found relevant the fact that a number of respondent's clients during the years in question had failed to pay legal fees owed to respondent, as well as a substantial financial loss sustained by him because a former professional associate failed to pay his share of office expenses. Finally, even though respondent eschewed claiming as mitigating factors matters which had occurred in his personal life, the referee felt those matters were indeed relevant to the mitigation issue. Those personal matters included the fact that respondent's father had been in an automobile accident in 1981 which resulted in multiple medical problems; that respondent's mother had died following an illness in 1983; that respondent had suffered from some depression for which he had received counseling; and that throughout these disciplinary proceedings, respondent had cooperated with the Director's office.[2]

---

1. The *In re Bunker* dictum insofar as applicable reads:

> [I]t should be noted that for violations occurring hereafter, the discipline will consist of either suspension or disbarment. The alternative of granting probation is still reserved by this court in the future, but it will be allowed in only the most extreme, extenuating circumstances, and absent such extreme, extenuating circumstances, the only issue for consideration upon such disciplinary proceed-

ings will be the determination of whether to disbar or suspend the lawyer who is guilty of such a violation.

*Bunker*, 294 Minn. at 55, 199 N.W.2d at 632.

2. By listing what the referee considered to be mitigating circumstances, we do not thereby place our imprimatur of acceptance on all of those reasons as relevant to mitigation. Obviously, some of the reasons he articulated do not comport with our previously expressed views of

One reason why we initially declined to accept the referee's recommendation for discipline was our concern that it facially, at least, appeared to materially depart from the dictum found in *In re Bunker.* As a result of the comprehensive briefs filed, as well as the oral arguments, we have been able to review almost two decades of disciplinary precedents involving cases arising from violation of personal income tax law filing requirements. We acknowledge, as we must, that we have not always literally followed the *In re Bunker* dictum even though we have rather persistently given it lip service. Rather, we have structured the discipline relative to the egregiousness of the lawyer conduct under consideration. When that historical approach is applied in this case, we now conclude the recommended discipline is not outside the mainstream of our prior opinions. Thus, we now are prepared to accept the referee's recommendation as incorporated by the parties in the stipulation with one minor addendum.

Our language in *In re Bunker* admittedly was dictum, not a holding. Thus, it is not conclusive evidence of the law and is not entitled to stare decisis deference. Nonetheless, it should not be ignored, and is entitled to great weight. *In re Estate of Bush,* 302 Minn. 188, 208, 224 N.W.2d 489, 501 (1974) *cert. denied, sub nom. Lee v. Arrowwood,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 768 (1985). We have never abandoned that dictum or rejected its un-

derlying rationale, both of which we have clearly and recently re-affirmed. *See In re Chrysler,* 434 N.W.2d 668, 669 (Minn.1989).

We note, however, that notwithstanding our language in *In re Bunker,* we have never disbarred a lawyer whose only misconduct involved violation of personal income tax law filing requirements.[3] However, nonfiling or late filing of personal income tax returns to avoid or delay tax payment has generally, and especially when combined with other instances of egregious professional discipline, warranted the imposition of the most severe professional discipline.[4] Suspension from practice usually has been deemed to be the appropriate discipline when such other egregious conduct is present, although the length of suspension often follows from a balancing of the conduct against asserted mitigating factors. And occasionally, consistent with the *In re Bunker* dictum, public reprimand and probation has been considered appropriate notwithstanding existence of concomitant egregious attorney misconduct, provided the lawyer has established that he or she was suffering from a physical, chemical, or mental disability; that such disability was causative of the conduct; and that the disability had been addressed by treatment; and it was unlikely to recur. *See In re Sahr,* 444 N.W.2d 290, 292 (Minn.1989). Thus, when the respondent lawyer has been able to establish by clear and convincing evidence "extreme

the types of factors that may be relevant to a finding of mitigation. *See, e.g., In re Sahr,* 444 N.W.2d 290, 292 (Minn.1989). However, the referee's "mitigation" findings do provide us with a clearer picture which permits measurement of respondent's lapses with respect to income tax filing requirements in the context of his life and practice as a whole during this period.

3. Although we have not ordered disbarment for tax nonfiling alone, we have done so when, in addition, the attorney has been found to have engaged in other substantial misconduct. *See, e.g., In re Serstock,* 316 N.W.2d 559, 561–62 (Minn.1982) (in addition to tax violations lawyer guilty of continued neglect of client affairs, commingling of personal and client funds in trust account, failure to maintain proper financial records, and failure to cooperate with Lawyers Board investigation); *In re Benson,* 431

N.W.2d 120, 121 (Minn.1988) (lawyer drafted documents to benefit himself, misappropriated client funds, made false certifications to this court, fraudulently induced client to sign trust agreement for lawyer's own benefit, altered and fabricated legal documents, and other similar offenses).

4. In 1972, when we initially enunciated in *In re Bunker* our intention to view violations of income tax filing requirements by lawyers as meriting the most serious sanction of loss of license to practice, our announcement was a precursor to later legislative action, in 1986, which resulted in the enactment of a statute, now codified as Minn.Stat. § 270.72 (1988), which circumscribes the issuance and renewal of professional or trade licenses issued by the state and its agencies when the applicant has delinquent uncontested tax liabilities of $500 or more.

extenuating circumstances" by way of mitigation and that the nonfiling of the personal tax returns had been caused by disabilities which had been treated, arrested, and were unlikely to recur, probation has been granted. *See, e.g. In re Weiss*, 421 N.W.2d 706, 706 (Minn.1988); *In re McCallum*, 289 N.W.2d 146, 147 (Minn.1980); *In re Kerr*, 287 N.W.2d 652, 652–53 (Minn.1979).

On the other hand, we have suspended for varying lengths of time a number of lawyers who were guilty of tax law filing violations. Generally, the duration of those suspensions has depended upon the existence and nature of other professional conduct rules violations. Cases which have resulted in long term suspension usually have involved numerous or willful violations of tax laws without substantial mitigating circumstances. *See, e.g., In re Frisbee*, 262 N.W.2d 162, 162 (Minn.1977) (willful and knowing failure to file during four tax years; pled guilty to federal violations, no mitigation); *In re Chrysler*, 434 N.W.2d 668, 668–69 (Minn.1989) (fifteen years of nonfiling and two criminal convictions); *In re Sax*, 321 N.W.2d 902, 903 (Minn.1982) (failure to file for six tax years, violations continued after discipline proceedings commenced, no mitigation). Frequently, cases concern tax law violations coupled with other serious violations, or tax law violations while the attorney was on probation. Typical of such is *In re Shaw*, 396 N.W.2d 573, 574 (Minn.1986).

But when the tax filing law violations have appeared to be less serious but coupled with other misconduct, and substantial mitigation factors existed, a number of attorneys have been suspended for shorter periods of time. To arrive at an appropriate time, we have engaged in balancing the severity of the offense against proven mitigation factors. *See, e.g., In re Ylitalo*, 420 N.W.2d 615, 616–17 (Minn.1988); *In re Munns*, 427 N.W.2d 670, 671–72 (Minn. 1988) (failure to file and pay income taxes mitigated by depression and divorce-related financial difficulties) (30 days actual and 2 years stayed suspension on conditions).

Finally, in another limited group of cases, we have deemed a public reprimand and/or probation to be appropriate discipline even though the alleged "extreme, extenuating circumstances" proof was either not "clearly and convincingly proved," or the alleged "extenuating circumstances" would not comport with any *ordinary* connotation of the phrase "extreme, extenuating circumstance." Examples are found in *In re Donohoo*, 441 N.W.2d 450, 450–51 (Minn.1989) (extreme busyness caused pattern of delinquency which was remedied, stipulation); *In re Price*, 407 N.W.2d 403, 403 (Minn.1987) (unspecified illness in family); *In re Knutson*, 405 N.W.2d 234, 236 (Minn.1987) (citing father's illness and death from cancer, wife's hospitalization with cancer, and daughter's bout with diabetes); *In re Piper*, 387 N.W.2d 882, 882 (Minn.1986) (unspecified personal illness, stipulation); *In re Anastas*, 368 N.W.2d 271, 272 (Minn.1985) (procrastination problems which had been addressed, stipulation). By way of mitigation, we noted in each of the cited cases that the attorney had timely made substantial estimated tax payments or had such small taxable income that when filed, though late, the delinquent return resulted in little or no tax liability, and each attorney asserted mitigation by way of cooperation with the disciplinary process, pro bono work, voluntary disclosure, and absence of prior disciplinary history.

Thus, this history of discipline in cases involving nonfiling of personal tax returns demonstrates that disbarment, absent other egregious circumstances, will rarely, if ever, be imposed. However, suspension usually is deemed to be the appropriate discipline when other egregious conduct is present, although the length of suspension often involves a balancing of the conduct against asserted mitigating factors. Finally, in a limited group of cases we have considered public reprimand and probation to be appropriate in those cases where the tax filing violations are less serious, free from aggravating circumstances,[5] and substantial mitigation exists.

5. "Aggravating circumstances" could encompass

criminal conviction for nonfiling, associated

Thus, as previously indicated, we view the rationale underlying the dictum in *In re Bunker* as still valid when the tax violations appear to have been especially egregious and have been aggravated by other misconduct or disciplinary history. We reiterated that rationale within the past year:

> But if the legal profession, with its close nexus to our governmental structure, is to maintain its legitimacy and integrity, we think it is not inappropriate for its members to be subjected to disciplinary sanctions for failing to file tax returns, the essential first step in our voluntary self-assessment system.

*In re Chrysler*, 434 N.W.2d at 669–70. Absent "extreme, extenuating circumstances" such as physical or mental illness which caused the nonfiling, nothing less than suspension will ordinarily be appropriate in a case fitting this category.

Turning, then, to this case, as noted, the referee felt there was "substantial mitigation" of a kind recognized, for example, in *In re Knutson*, 405 N.W.2d at 236, to justify his recommendation of probation. Although we recognize that some relevant differences exist in the facts of the two cases, and although we must ultimately be the ones to determine the appropriate discipline, we traditionally do place great weight upon the referee's recommendation. *See In re Munns*, 427 N.W.2d at 671; *In re Pearson*, 352 N.W.2d 415, 419 (Minn.1984). With a slight modification, we do so in this case. Therefore, we hereby publicly reprimand respondent and place him on probation for two years from the date of this opinion. The conditions of his probation are that respondent shall pay the difference still owed for his 1981 and 1982 income taxes (as computed by his accountant and as computed by the commissioner), pay costs of these disciplinary proceedings to the Director, hire an accountant to timely prepare and file 1989 and 1990 state and federal personal income tax returns, furnish proof of filing of all returns to the Director, and complete the professional responsibility section of the Minnesota bar examination.

---

misconduct relative to handling client affairs, violations occurring while on probation, repetitive nonfiling of returns, nonfiling as an attempt to avoid or delay income tax payment, and nonpayment or underpayment of withholding or estimated tax when due. "Substantial mitigation," although no single factor would be sufficient, might include such factors as family illness, absence of prior disciplinary history, cooperation with the Director's investigation, voluntary disclosure, and extensive pro bono or civic work.