**In re Petition for DISCIPLINARY ACTION AGAINST Robert E. MATHIAS, an Attorney at Law of the State of Minnesota.**

No. C1–92–398.

Supreme Court of Minnesota.

Feb. 5, 1993.

Thomas C. Vasaly, Acting Director of Lawyers Professional Responsibility Bd., Betty M. Shaw, Sr. Asst. Director, St. Paul, for appellant.

Gene Halverson, Duluth, for respondent.

**PER CURIAM.**

A petition for disciplinary action was filed against respondent Robert E. Mathias by the Director of the Office of Lawyers Professional Responsibility charging him with violations of Rules 8.4(b) and (d), Minnesota Rules of Professional Conduct, for failure to file timely returns due after September 1, 1985 and with violations of Disciplinary Rules 1–102(A)(5) and (6) for late tax filings prior to that date, reaching back as far as 1973. The referee appointed by this court conducted a full hearing and recommended that respondent be publicly reprimanded and placed on probation until April 16, 1994. For the reasons discussed, we decline to accept this recommendation and instead impose a 30–day suspension with conditions for reinstatement.

■ The director ordered a transcript of the hearing and disputes portions of the referee's findings of fact and conclusions of law. Therefore, while the referee's findings of fact are not conclusive, Rule 14(e), Rules on Lawyers Professional Responsibility, they are accorded great deference, and "will not be set aside unless clearly erroneous." *In re Andrew*, 465 N.W.2d 576, 577 (Minn.1991) (quoting *In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988)).

Respondent was admitted to the practice of law in Minnesota on October 21, 1966 and has practiced law primarily in Duluth, initially as an employee and, after 1974, in partnership or as a sole practitioner. He has no disciplinary history. The referee found that respondent failed to file timely Minnesota tax returns for the years from 1976 to 1990, with the exception of his timely filed 1982 return. In addition, respondent stipulated that he failed to timely file his Minnesota tax returns from the years 1973 through 1981. Accordingly, we include respondent's Minnesota filings for the years 1973–1975 in the conduct at issue in this case and examine the chronic late filings during that 17–year period. The referee found that each of respondent's state tax filings, except in 1982, was between one and two years late.

The referee also considered respondent's federal tax filing compliance and found that respondent failed to file timely federal tax returns for the years 1973, 1974, 1976 through 1979, and for the years from 1985 through 1990. Although there was no finding as to the extent of each tardy filing, evidence introduced at the hearing in the form of a letter from the I.R.S. to the director does establish the actual date of filing of each of respondent's federal tax returns. The untimely federal returns were filed from one to three years late.[1]

Finally, the referee found that all of respondent's Minnesota tax returns have now been filed and that, as of June 8, 1992, respondent had paid all taxes, penalties and interest charges owed to the federal and state governments relating to these late filings.

The referee considered numerous factors as mitigating circumstances in arriving at his recommendation for discipline, among which were: (1) emotional problems that respondent experienced from the breakup of his first marriage in the late 1970s; (2) respondent's record of community service, including coaching several youth sports activities; (3) respondent's general reputation for honesty and integrity in the courtroom, to which several district court judges testified at the referee hearing; (4) respondent's hitherto unblemished disciplinary history; and (5) respondent's pro bono work, mostly involving free legal assistance given to members of the University of Minnesota–Duluth football team.[2]

Although the referee did not explicitly find that respondent intentionally filed tax

---

1. Although there is evidence in the record establishing respondent's nonpayment and underpayment of estimated withholding taxes, we do not consider that conduct at issue in this case.

2. By referencing these circumstances, we do not hold that their accumulation constitutes mitiga-

tion *per se*. However, as we stated in *Wylde*, we consider them of some use in measuring respondent's late tax filings "in the context of his life and practice as a whole" during the period of late filing. *In re Wylde* 454 N.W.2d 423, 424–25 n. 2 (Minn.1990).

returns late, that finding is implicit in both the recommended discipline and the referee's finding that the late filings were caused by a "combination of some economic problems (including lack of sufficient capital), some emotional problems, some negligence, and some procrastination." The record does not demonstrate that respondent was unaware of the deadline for payment of his taxes.

■ In our view, respondent's late tax filings constitute a violation of Rule 8.4(b), Minnesota Rules of Professional Conduct, which states in pertinent part that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." In addition, this conduct violates Rule 8.4(d), which states that a lawyer shall not "engage in conduct that is prejudicial to the administration of justice." Rule 8.4(d), MRPC. Finally, respondent's late filings prior to September 1, 1985 violated the counterparts to Rule 8.4(b) and (d) contained in Disciplinary Rule 1–102, subd. (A)(5) and (6), which were in effect at that time.[3]

■ While respondent contends that he should not be disciplined for the commission of a criminal act absent a criminal conviction, the argument overlooks the fact that respondent has not been subjected to criminal sanctions and therefore cannot claim the safeguards applicable in criminal proceedings. Moreover, we have repeatedly stated that an attorney may be disciplined for acts which are criminal but do not result in a criminal conviction. *See Matter of Hanratty*, 277 N.W.2d 373 (Minn.1979).

■ What remains then is the appropriate sanction for this chronic failure to timely file tax returns, encompassing approximately 17 years. In *In re Bunker*,

294 Minn. 47, 199 N.W.2d 628 (1972), we recognized that the late filing of income tax returns is professional misconduct of the most serious nature, but we have not uniformly imposed sanctions because of the unique substantive or procedural posture of the individual cases.[4] In our view, the chronic and habitual nature of this misconduct, spanning most of respondent's career as an attorney, warrants the sanction of a 30–day suspension. While respondent has demonstrated substantial community contributions, a cooperation with the director in these proceedings and an otherwise healthy professional reputation, none of those factors fit within what we have traditionally considered "extreme extenuating circumstances." *See In re Weiss*, 421 N.W.2d 706 (Minn.1988). His personal problems do not excuse his conduct but are, to a limited extent, considered "extenuating circumstances" of the kind we have previously considered; *Wylde* at 426.

In consideration of the foregoing factors, we hereby suspend respondent from the practice of law for a period of 30 days and condition his reinstatement on his payment of $750 costs to the director, and his provision to the director of a written report of his timely compliance with the filing requirements of both the federal and state income tax laws for the 1991 tax year, together with authorization to enable the director to verify with taxing authorities compliance with those filing requirements.

Suspension ordered.

PAGE, J., took no part in the consideration or decision of this case.

---

3. Subdivisions 5 and 6 of DR 1–102(A) provide:
   (A) A lawyer shall not:
   \* \* \* \* \* \*
   (5) Engage in any conduct that is prejudicial to the administration of justice.
   (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

4. *See Wylde, supra,* at 425–26 where we discuss the various sanctions imposed where such misconduct stands alone, is coupled with other misconduct or is balanced against factors in mitigation.